IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Eduardo Soto-Cintron, *et al.*,

    Plaintiffs,

        v.

United States of America, *et al*.,

    Defendants.

**Civil No. 15-1123 (SEC)**

# OPINION & ORDER

On February 12, 2015, Plaintiffs Eduardo Soto-Cintrón and his minor son ASM sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2679, *et seq*, claiming that federal agents subjected them to unlawful arrest, detention, and assault. Pending before the Court is the United States' Motion for Summary Judgment. For the reasons that follow, this motion is GRANTED.

**I.    Background**[1]

On May 14, 2013, the United States Postal Inspection Service (USPIS) intercepted a package sent from Florida, which they believed contained illegal firearms. The USPIS requested the assistance of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to make a controlled delivery of the package in Puerto Rico. See Docket # 32, ¶ 1. A warrant-backed examination of the package revealed that it contained six undeclared Glock semi-automatic pistols. The warrant was based upon possible felony violations of 18 U.S.C. § 922(a)(1)(A) and (a)(3), as well as 18 U.S.C. § 1715.

---

[1] Unless otherwise noted, the following facts are uncontested.

Rather than deliver the package to the addressee in Puerto Rico, the operational plan called for a notice to be left at the home of the addressee informing the recipient that the package could be claimed at the U.S. Post Office in Coto Laurel, Puerto Rico. The USPIS was the lead investigative agency with ATF providing assistance. USPIS personnel took up primary surveillance positions to observe activity inside the Post Office and parking lot while ATF personnel were posted within the perimeter.

During the operation, a USPIS inspector identified two vehicles over the radio entering the Post Office: Plaintiffs' red Ford F-150 pickup truck and a white Ford F-150 which was later determined to have been driven by the suspect. Special Agent (SA) Victor González heard over the radio that Plaintiffs remained in the vehicle for some period of time once it entered the parking lot. This raised a red flag to SA González.[2] His suspicion was based on his experience as an ATF agent that, in some controlled-delivery cases, the person that retrieves the package hands it over to someone else. See Docket # 32, ¶¶ 5 and 7.[3]

While both trucks were still in the parking lot, a radio transmission from a USPIS inspector revealed that the package had been delivered to the suspect. Another radio transmission indicated that Plaintiffs' red pick-up truck was leaving the parking lot. See Docket # 32, ¶ 7. Upon hearing these transmissions, SA González concluded that the package containing the weapons may have been in that truck. Before acting on

---

[2] Although Plaintiffs deny this, they provide no evidence showing either that SA González did not hear the radio broadcast, or that the same "raised a red flag." Rather, they simply add that SA González was also suspicious because the red truck later "began to pull out of the parking lot." Plaintiffs also comment that another agent, SA Laboy, stated that Plaintiffs' truck was stopped because "it was believed that the guns may have been in the truck." See Docket # 36-1, ¶ 5.

[3] Although Plaintiffs purport to deny this statement, they do not challenge with any competent evidence the agents' experience with these cases. Rather, Plaintiffs say that there is no "supporting statistical data" concerning Defendant's assertion. But Plaintiffs present no authority supporting the contention that statistical data is needed to make a statement based on personal knowledge admissible for purposes of summary judgment. After all, it is black-letter law that affidavits – even self-serving ones – are apt for consideration on summary judgment so long as they "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). SA González's statement clearly fits this mold.

his belief, SA González called USPIS inspector Thompson to verify the location of the package. Thompson, however, told SA González that he did not know.

Given these circumstances, SA González decided to detain Plaintiffs' truck. ATF agents blocked the exit to the parking lot, approached the vehicle with weapons drawn, and ordered Plaintiffs to exit the truck. Initially, Plaintiffs did not understand what the ATF agents were saying because their windows were rolled up, the air conditioning was on, and the radio was playing. After the vehicle stopped, ATF agents removed Plaintiffs from the vehicles, placed them on the ground, and slapped on handcuffs.

Plaintiffs remained in handcuffs between 10 to 15 minutes, during which they were subjected to questioning by the ATF agents. A visual inspection of the truck's cabin did not reveal any package. The whole intervention lasted, at most, 20 minutes. It is uncontested that Plaintiffs were never placed inside a police car or other law enforcement vehicle during the stop. It is also uncontested that Plaintiffs did not suffer any lasting injury.

## II.     Standard of Law

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). When conducting this analysis, courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), and must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012).

## III.    Discussion

The FTCA "comprises a limited waiver of the federal government's sovereign immunity with respect to private causes of action sounding in tort." Fothergill v.

United States, 566 F.3d 248, 252 (1st Cir. 2009). Among other things, the FTCA authorizes suits against the United States for claims of intentional torts (that is, claims based on "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution")  committed by its law enforcement officers. See 28 U.S.C. § 2680(h). In assessing Plaintiffs' claim for unlawful arrest, detention, and assault, the Court must look to the "law of the place where the act or omission occurred." See Calderón-Ortega v. United States, 753 F.3d 250, 252 (1st Cir. 2014) (quoting 28 U.S.C. § 1346(b)(1)). Puerto Rico substantive law thus governs here.

As to the scope of liability, the FTCA makes the federal government "liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. This requirement is to be read liberally. As the Supreme Court has stressed, the phrase " 'like circumstances' do not restrict a court's inquiry to the same circumstances, but require it to look further afield" for "private person analogies" to the conduct in question. United States v. Olson, 546 U.S. 43, 44 (2005).

With respect to Plaintiffs' claim for unlawful arrest and detention, the Government raises a tiered defense. It first argues that Plaintiffs were never actually arrested or unlawfully detained; rather, they were only subjected to a "brief investigative stop" as authorized by Terry v. Ohio, 392 U.S. 1 (1968). Alternatively, the Government contends that the detention was not unlawful pursuant to the laws of Puerto Rico. Because the Court agrees with the Government on the first point, there is no need to address the second. Before the ship sails, however, some explanation is warranted as to that last statement.

The determination of whether a stop was lawful under Terry means only that the officer's intervention did not violate the detainee's right, under the Fourth Amendment, to be free from unlawful searches and seizures. Indeed, a Terry stop may be valid even though the officer had no probable cause to arrest. See United States v. Sokolow, 490 U.S. 1, 7 (1989). But Plaintiffs' false arrest claim comes under Puerto

Rico law, which does require probable cause to arrest. As far as the Court has been able to discern, the Puerto Rico Supreme Court has not addressed whether the Commonwealth's officers are allowed to perform Terry-style stops. And although the officers in question here are federal agents, federal law makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances" under the law of the state in which the offense occurred. 28 U.S.C. § 2674; Rodríguez v. United States, 54 F.3d 41, 44 (1st Cir. 1995) ("[T]he United States is liable—"in the same manner and to the same extent"—for a false arrest of plaintiff Rodríguez, 'as a private individual' would be in 'like circumstances' under the applicable state law."). So, the question is whether the United States is entitled to raise Terry v. Ohio as a defense to an FTCA suit under Puerto Rico law premised on false arrest and detention. While Puerto Rico substantive law governs, the answer to this quandary unexpectedly lies in the common law concept of "conditional privilege."

In Rodríguez v. United States, 54 F.3d 41, 45 (1st Cir. 1995), federal agents mistakenly arrested the plaintiff because they had confused her with a wanted person. The plaintiff brought suit against the United States under the FTCA alleging unlawful arrest and detention. The district court entered summary judgment against the plaintiff. On appeal, the First Circuit noted a paucity of Puerto Rico Supreme Court jurisprudence addressing false arrest claims based on the execution of a valid arrest warrant against the wrong person. Yet, finding that the "Puerto Rico Supreme Court [had] conformed its limited 'false arrest' jurisprudence to common law principles," the First Circuit adopted the Restatement (Second) of Torts as the appropriate framework for its analysis. The same reasoning applies here. Given that the Puerto Rico Supreme Court has not addressed whether investigatory stops are valid under Puerto Rico law, the Court shall examine Plaintiff's false arrest and detention claim – and the viability of the government's defense – through the lens of the Restatement.[4]

---

[4] In so doing, the Court is mindful that the Restatement "deals only with tort liability, and the question whether the conduct of the actor in making an arrest is criminal is beyond its scope." Restatement (Second) of Torts §

A warrantless arrest is privileged whenever "the conditions stated in one or another of §§ 119, 120, and 121 and in §§ 122- 132" are satisfied. Restatement (Second) of Torts § 118 (1965), cmt. c. Some of these sections are not relevant because they deal with liability for arrests performed by private persons, see § 119 and 120; and for arrests made under warrant, see § 122-126. The other subsections concern conditions of the arrest that are not in dispute here, see § 127-132 (concerning the allowable time, place and purpose of arrests). For this case, then, § 121 is the only relevant subsection.

Under § 121, a "a peace officer acting within the limits of his appointment is privileged to arrest another without a warrant […] if, although no act or omission constituting a felony has been committed, the officer reasonably suspects that such an act or omission has been committed and that the other has committed it." Restatement (Second) of Torts § 121(b) (1965) (emphasis added). Whether by coincidence or not, this language is functionally and semantically the same used by the Supreme Court in Terry, which held that the "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (emphasis added).

This observation brings us full circle. In Rodríguez, the First Circuit held that "the United States is entitled to assert in its defense a conditional privilege conferred upon its agent by applicable local law in the same manner and to the same extent as a nongovernmental principal could assert in similar circumstances." Rodríguez, 54 F.3d 45 (collecting cases). In this case, the Court holds that the Terry stop is such a defense, and one which the government is entitled to raise here.[5] Thus, if SA González

---

118 (1965). For this analysis, the Court will track the language of the Restatement, but this should not be interpreted as a finding on whether or not Plaintiffs were "arrested" under Puerto Rico law.

[5] An astute reader might question how a "nongovernmental principal" – that is, the "principal" of a "private person" instead of a government agent – could ever raise a defense premised on the conduct of law enforcement officers. Given that the government is liable to the same extent as the principal of a private person under applicable state law, and that private persons cannot make investigatory stops, then how could the government

performed a valid investigatory stop, then his actions were privileged and Plaintiffs' false arrest claim is dead on arrival.

### The Terry Stop

In order to determine whether an investigatory stop is lawful under <u>Terry</u>, the Court must ask two questions. First, whether the stop was "justified at its inception" or, in other words, whether there was reasonable suspicion to support the detention. <u>United States v. Pontoo</u>, 666 F.3d 20, 26 (1st Cir. 2011) (citing <u>United States v. Ruidíaz</u>, 529 F.3d 25, 27 (1st Cir. 2008)). Second, the Court must ask whether the actions taken by the officers were "reasonably related in scope to the circumstances which justified the interference." <u>United States v. Acosta–Colón</u>, 157 F.3d 9, 14 (1st Cir. 1998).

A finding of reasonable suspicion must be premised upon "a particularized and objective basis for suspecting the particular person stopped of criminal activity." <u>Id.</u> (citing <u>United States v. Cortez</u>, 449 U.S. 411, 417–18 (1981)). This requires the Court to assess the "totality of the circumstances," <u>Id.</u> (citing <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002)), and determine whether the officer had a particularized and objective basis to conclude that "criminal activity may be afoot." <u>See</u> <u>Terry</u>, 392 U.S. at 30. In doing so, the Court must cast aside any "inchoate and unparticularized" suspicions or hunches, and focus on the "specific reasonable inferences [that the officer] is entitled to draw from the facts in light of his experience." <u>Id.</u> at 28 (citing <u>Brinegar v. United States</u>, 338 U.S. 160 (1949)); <u>see also</u> <u>United States v. Tiru-Plaza</u>, 766 F.3d 111, 116 (1st Cir. 2014), cert. denied, 135 S. Ct. 1734 (2015) (courts must

---

raise such a defense? The flaw in this reasoning is that law officers are <u>also</u> private citizens, and may bear personal liability when their actions as law enforcement agents run aground of applicable law. Indeed, the legislative history accompanying the amendment to the FTCA adding the intentional torts exception (§ 2680(h)) makes this point clear: "Congress intended to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in Bivens (and for which that case imposes liability upon the <u>individual</u> Government officials involved)." <u>Rodríguez v. United States</u>, 54 F.3d 41, 45 (1st Cir. 1995) (citing S.Rep. No. 588, 93d Cong., 2d Sess. 3 (1973), reprinted in 1974 U.S.C.C.A.N. 2789, 2791; and <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 619 (1971)) (emphasis added).

defer "to the ability of trained and experienced police officers to draw from the attendant circumstances inferences that would 'elude an untrained person.' ").

The Court thus dons the shoes of SA González, since he was responsible for the decision to detain Plaintiffs. From the outset, it is worth mentioning that much of SA González's information came from the radio transmissions of USPIS personnel, who had surveillance positions at the parking lot and the USPS premises. His reliance on this information was eminently reasonable.

From the radio transmissions, SA González knew that two trucks – one red and another white – had entered the postal office premises. SA González became suspicious of the persons in the red truck, since the radio operator later indicated that they had remained in the truck for quite some time. His suspicions were further heightened because, from his experience with this type of controlled-delivery operation, he knew that it would not be unusual for the person retrieving the package from the Postal Office to be acting in concert with someone else. From these facts, it was reasonable for SA González to infer that the persons in the red truck were waiting for someone to hand them the package. SA González then heard that the package had been delivered to the suspect, and that the red truck was leaving the parking lot.

So, at the time SA González decided to detain Plaintiffs, he had a reasonable and particularized suspicion that the illegal firearms had been transferred to the persons in the red truck, which was quickly leaving the parking lot. Not only that, but SA González also attempted (albeit unsuccessfully) to corroborate the information he had available. Considering the totality of the circumstances, the Court finds that the stop was justified at its inception.

Plaintiffs resist this conclusion, arguing that the evidence shows that their actions were benign. All they did was "pull into the Postal Office's parking lot and go into the building to retrieve their mail." Docket # 36, p. 4. Certainly, innocent activity cannot justify an investigative stop. But such conduct "can be suspicious when viewed in the context of other information or surrounding circumstances that the police are

aware of." People of Territory of Guam v. Ichiyasu, 838 F.2d 353, 355 (9th Cir. 1988) (citing United States v. Cortez, 449 U.S. 411, 419 (1981)). In this case, context is given by the special circumstances surrounding controlled-delivery cases, which may involve the participation of other individuals aside from the one actually retrieving the package. From SA González's point of view, Plaintiffs' otherwise innocent conduct – which coincided with the main suspect's retrieval of the package –was arguably consistent with criminal activity. This challenge therefore fails.

Plaintiffs also argue that SA González did not have an objective basis to believe that the package containing the illegal firearms had been transferred to the red pickup truck. They say that the "Government had eyes on the package" at all times because USPIS agents were surveilling the location. Likewise, Plaintiffs point out that another agent testified that at the same time Plaintiffs were being stopped, the actual suspect came out of the building and was arrested.

This argument presumes too much. It is not reasonable to infer that all agents during the intervention had accurate and immediate situational awareness of the location of all possible suspects and packages. Indeed, even if some agents were more aware than others, the only one that matters is SA González, who relied almost exclusively on the spotty radio broadcasts. Furthermore, the evidence on record simply undermines this argument. In one of these transmissions, the radio operator signaled the departure of the red truck. See Docket # 32-2, ¶ 14. SA González explained that he "could not think of any other reason" for which the operator would make a point of noting the departure of the truck, except to indicate that the truck may have been leaving with the weapons on board. Id. at ¶ 11.

A law enforcement officer "is not required to possess the clarity of vision that arises only from hindsight." Pontoo, 666 F.3d at 28-29 (citing Illinois v. Wardlow, 528 U.S. 119, 125-26 (2000)). Indeed, courts must "take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." United States v. Sharpe, 470 U.S. 675,

Case 3:15-cv-01123-SEC   Document 42   Filed 01/05/17   Page 10 of 12

Civil No. 15-1123 (SEC)                                                                                           Page 10

686 (1985). During the limited timespan between the radio transmission and Plaintiffs' detention, the circumstances show SA González had a reasonable suspicion to believe Plaintiffs' truck contained the package in question. The stop was justified at its inception.

Next, the Court must assess whether the stop was "reasonably related in scope to the circumstances which justified the interference." To do so, the Court must also analyze the totality of circumstances. This means weighing, among other things, "the length of the detention, the restrictions placed on an individual's personal movement, the force (if any) that was exerted, the information conveyed to the detainee, and the severity of the intrusion." United States v. Sowers, 136 F.3d 24, 28 (1st Cir. 1998). Above all, an inquiring court must bear in mind that " 'it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.' " Pontoo, 666 F.3d 20, 30 (1st Cir. 2011) (citing United States v. Taylor, 162 F.3d 12, 18 (1st Cir. 1998)). Here, it is clear that the actions taken by the ATF agents were narrowly tailored and adequate under the circumstances.

To start, there is "no rigid time limitation on Terry stops." United States v. Acosta-Colón, 157 F.3d 9, 20 (1st Cir. 1998) (citing United States v. Sharpe, 470 U.S. 675, 685 (1985)). In this case, it is undisputed that the intervention lasted, at most, twenty minutes, and Plaintiffs were in handcuffs for only a portion of that time. From a pure numbers standpoint, this case is no outlier; the First Circuit has validated stops lasting as much as 75 minutes. United States v. McCarthy, 77 F.3d 522, 531 (1st Cir. 1996). In the end, however, the "appropriate length of a Terry stop is gauged by whether the officer diligently pursued a reasonable investigative approach calculated to ensure officer safety and, at the same time, confirm or dispel his suspicions." Pontoo, 666 F.3d at 31. Here, it is uncontested that the agents searched both Plaintiffs and the truck, and found nothing. As soon as another agent informed SA González that Plaintiffs were not involved in any criminal activity and that they had captured the

suspect, Plaintiffs were released. The length of the stop was therefore commensurate to its purpose.

Plaintiffs also complain that, because the agents handcuffed them and placed them on the ground, the intervention went beyond what is typically allowed for an investigatory stop. Nevertheless, "the limits of a Terry stop are not automatically transcended by an officer's use of other prophylactic measures" where the safety of the officer or public may be at risk. See Pontoo, 666 F.3d 20. These include restraint by handcuffs, ordering a suspect to the ground, or stopping a car at gunpoint. Id. (collecting cases). All three were used in this case, and all of them were justified. After all, it is reasonable to believe that persons involved in a gun-smuggling operation would also be armed, and to act accordingly.

The Court finds that Plaintiffs' detention falls within the bounds drawn by Terry and its progeny. As a result, the agents' actions were privileged. Plaintiffs' false arrest and detention claims necessarily fail.[6]

Plaintiffs' assault claim fares no better. This one is couched on the fact that Plaintiffs were handcuffed and placed on the pavement, and that the agents had "no justification to intervene" with them. But "[w]here a privilege to arrest exists, it

---

[6] The Court notes that qualified immunity may provide an alternative basis for the resolution of this case. In Abreu-Guzman v. Ford, the First Circuit dismissed FTCA claims against the United States for false arrest under Puerto Rico law after determining that the federal agents were entitled to qualified immunity because they had a reasonable basis to believe they had probable cause to detain the person. 241 F.3d 69 (1st Cir. 2001) ("A reasonable officer could have believed there was probable cause that Abreu was [the suspect]"). Put differently, the First Circuit affirmed the dismissal of the FTCA claim regardless of the objective existence of probable cause, which is not appreciably different from the conclusion the Court reaches here. See also Rodríguez v. United States, 54 F.3d 41, 45–47 (1st Cir. 1995) and Solis-Alarcón v. United States, 662 F.3d 577, 583 (1st Cir. 2011). Along the same vein, several courts have held that "if an employee would prevail on a particular immunity under state law, so too should the United States under the FTCA." See Valdez v. United States, 58 F. Supp. 3d 795, 828 (W.D. Mich. 2014) (emphasis added) ("From a policy perspective, the answer would seem self-evident: if the point of the FTCA is to make the United State vicariously liable for certain intentional torts of its employees under state law, there would be no reason to suggest the United States should be subject to broader liability than its employees would face under state law. Rather, one would expect the liability of the United States to be coterminous with the liability of its employees under state law. So if an employee would prevail on a particular immunity under state law, so too should the United States under the FTCA."). But the law on this point is not settled, as other courts have reached the opposite conclusion. Id.

justifies not only the confinement but also any conduct which is reasonably necessary to effect the arrest." Restatement (Second) of Torts, § 118 cmt. b. Here, the agents' actions were "prophylactic measures" taken as part of a legitimate Terry stop. Those actions were privileged, and cannot serve as a basis for the assault claim.

### IV.    Conclusion

"No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." Terry, 392 U.S. at 9 (citing Union Pac. R. Co. v. Botsford, 141 U.S. 250, 251 (1891)). There is no doubt that Plaintiffs' experience must have been harrowing. As the Seventh Circuit recently opined, the "proliferation of cases … in which 'Terry' stops involve handcuffs and ever-increasing wait times in police vehicles is disturbing… ." Ramos v. City of Chicago, 716 F.3d 1013, 1018 (7th Cir. 2013). The Court shares this sentiment, and stresses that this type of intervention must not become the new normal.

That said, the agents in this case were indeed authorized by law and circumstance to detain Plaintiffs. Defendant's motion for summary judgment is, therefore, granted as to all claims. Judgment shall follow accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 5th day of January, 2016.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge